ELIOT D. PRATT, a Taxpayer of the City of New York, Plaintiff, *v.* FIORELLO H. LA GUARDIA et al., Constituting the Board of Estimate of the City of New York, et al., Defendants.

Supreme Court, Special Term, New York County, March 16, 1944.

*Henry Epstein, Edward Weinfeld, Shirley Adelson* and *Abraham Klugsberg* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Jeremiah M. Evarts* and *William S. Lebwohl* of counsel), for City of New York and others, defendants.

*Samuel Seabury* and *Churchill Rogers* for Metropolitan Life Insurance Company and another, defendants.

SHIENTAG, J. On June 3, 1943, the Board of Estimate of the City of New York, by a vote of eleven to five, adopted a resolution approving a project submitted by Stuyvesant Town Corporation and a proposed form of contract for consummating that project, between the City of New York, on the one hand, and Stuyvesant Town Corporation (Stuyvesant) and Metropolitan Life Insurance Company (Metropolitan), on the other.

Under that contract, which was formally executed on August 4, 1943, a rehabilitation or redevelopment project was embarked upon pursuant to article XVIII of the Constitution of the State of New York (adopted in 1938) and the Redevelopment Companies Law, passed pursuant thereto (L. 1942, ch. 845, as amd. by L. 1943, ch. 234). This project was to be undertaken in an area comprising some eighteen city blocks on the east side of Manhattan.

On the eve of the Board of Estimate hearing, in a proceeding entitled *Matter of Murray* v. *LaGuardia* (see *infra*), certain property owners in the proposed redevelopment area petitioned,

under article 78 of the Civil Practice Act, for an order restraining the Board of Estimate from considering the project or from authorizing the City to enter into the proposed contract. The basis of that proceeding was that the Redevelopment Companies Law was unconstitutional and that the proposed contract, if entered into, would be tainted with illegality.

On June 4, 1943, Mr. Justice SCHREIBER at Special Term (180 Misc. 760) denied the petitioner's application and on cross motion dismissed the petition in an opinion upholding the constitutionality of the law in question and the validity of the project proposed to be undertaken thereunder. On July 2, 1943, this ruling was affirmed without opinion by the Appellate Division, First Department, two Justices dissenting (266 App. Div. 912). On December 2, 1943, the holding below was affirmed by the Court of Appeals by a vote of 4 to 2 (*Matter of Murray* v. *LaGuardia*, 291 N. Y. 320, certiorari denied 321 U. S. 771). In the comprehensive prevailing opinion of Judge LEWIS, the history of the housing amendment to the Constitution, the provisions of the Redevelopment Companies Law, the objects sought to be accomplished thereby, the requirements and reciprocal obligations under the statute and the validity of the proposed project were carefully considered. A study of that opinion is essential to the consideration of the further questions presented on these motions.

In the meantime, after the decision at Special Term in the *Murray* case and after the contract was executed, the present action was commenced on August 16, 1943. It is a taxpayer's action, under section 51 of the General Municipal Law, to secure (1) a declaratory judgment that the carrying out of the contract and certain acts performed and proposed to be performed thereunder were illegal and void, and (2) a permanent injunction restraining the performance of such acts as " a threatened gross and illegal misuse of public funds and property." In brief, the object of the present taxpayer's action is to prevent the parties from proceeding under the contract and to annul the earlier determinations by various governmental agencies of approval of the proposed project.

On the argument before the Appellate Division and the Court of Appeals in the *Murray* case, the present plaintiff, together with others, presented briefs as *amici curiæ*. The decision of the Court of Appeals having upheld the constitutionality of the Redevelopment Companies Law and sustained the validity thereunder of the rehabilitation project undertaken, the main basis of the present plaintiff's complaint has been eliminated.

The plaintiff claims, however, that there are various other grounds of objection presented in his case which were not passed upon and determined by the higher courts in the *Murray* case. The plaintiff in this action has therefore moved for a temporary injunction to restrain further performance of the contract and the alleged illegal action intended to be taken thereunder. The defendants have made a cross motion for the dismissal of the complaint as insufficient in law and on the basis of official records and documentary proof. The defendants contend that the grounds now urged by this plaintiff were actually presented to the Appellate Division or to the Court of Appeals or to both of those tribunals, were necessarily considered and determined by those courts, and that therefore their holdings are conclusive under the rule of *stare decisis*. What are the new grounds which the plaintiff urges were not considered and determined in the *Murray* case? Broadly speaking, they are three in number: (1) that the contract entered into by the City with Stuyvesant and Metropolitan is illusory and imposes no real obligation to perform on the part of the two companies named; (2) that the manner in which the project was approved, and the contract to carry it out adopted by the Board of Estimate, were in violation of certain provisions of the Charter and of the Administrative Code of the City of New York, which it is claimed were not superseded by the Redevelopment Companies Law; and (3) that Stuyvesant and Metropolitan, to the knowledge of the City, have indicated an intention to make no provision for the housing of Negroes in the new development; and that such proposed action is a denial of the equal protection of the laws and in violation of the provisions of the Constitution of the United States and the Constitution of the State of New York.

I hold that the decision of the Court of Appeals in the *Murray* case is not *stare decisis* of the foregoing three questions; there may be some doubt as to the first question, but it seems clear that the Court of Appeals did not pass upon the other two. The third ground of objection was not presented in any form to the Court of Appeals; it was not referred to in any of the briefs. While the first and second grounds were urged, for the most part in briefs of *amici curiæ,* presented to the Court of Appeals and answered by the defendants, they were matters, in large measure, extraneous to the record then before the court. They had not been litigated below and there is no indication in the opinion of Judge LEWIS that they had been considered and passed upon by the court. The opinion was concerned almost

entirely with the question of the constitutionality of the Redevelopment Companies Law and the legality of the project sought to be undertaken pursuant to that statute. My observation leads me to the belief that it is not the practice of the Court of Appeals to consider questions outside the record, and that, when it does, a clear indication to that effect is reflected in the opinion of the court.

Let us proceed, then, to take up the three additional grounds for relief here urged.

1. The claim that the contract is illusory. It is clear that the contract imposes an absolute obligation upon the redevelopment company to construct the project in accordance with the plan. The obligation must be performed in any event within a reasonable time. However, should the Comptroller of the City of New York ascertain that materials and labor are available at prices not substantially higher than those prevailing on January 1, 1943, he may accelerate the time of performance by certifying that materials and labor are available at such prices. In other words, the redevelopment company is obligated to perform within a reasonable time or when the Comptroller makes the certification referred to, whichever time is earlier. The obligation on the part of Stuyvesant and Metropolitan to perform is by no means illusory. There is no escape from it. The plaintiff would have us believe that the comprehensive detailed contract, entered into after long negotiation and close scrutiny by various governmental agencies, was all " sound and fury, signifying nothing " so far as the companies who are obligees are concerned. A contract cannot be interpreted to reach any such absurd result. (*Outlet Embroidery Co.* v. *Derwent Mills,* 254 N. Y. 179; *Wood* v. *Duff-Gordon,* 222 N. Y. 88.)

2. The claim that certain specific provisions of the New York City Charter (1938) and of the Administrative Code of the City of New York (L. 1937, ch. 929, as amd.) were violated when the contract was approved and entered into. This raises the difficult question of statutory construction as to when a law general in its application supersedes an earlier special law applicable to one city or locality. There are usually persuasive arguments on both sides. Concretely, it is urged (a) that there was a noncompliance with section 384 of chapter 15 of the Charter, and with section 384–10.0 of the Administrative Code, providing in substance that the sale or lease of City property shall be at public auction or by sealed bids after advertisement and after appraisal by three disinterested appraisers, but only

after a three-quarters vote of the Board of Estimate, and (b) that there was a noncompliance with chapter 14 of the Charter dealing with " Franchises ", particularly sections 372, 374 and 375. Those sections and others in that chapter require a public hearing, a three-fourths vote of the Board of Estimate, separate and additional approval by the Mayor to the granting of any franchise by the City, and that consents to the private use of pipes, conduits, etc., under the public streets of the City, shall be revocable at any time. Obviously some of the foregoing requirements are on their face inapplicable to and out of harmony with the entire legislative intent as clearly expressed in the Redevelopment Companies Law.

The only question that is at all fairly debatable is whether a three-fourths vote by the Board of Estimate was required for the approval of the rehabilitation project because public streets of the City were involved in the transaction (a three-fourths vote would require twelve votes; the project was approved, as already stated, by eleven votes in the Board of Estimate). The contention of the plaintiff in this respect cannot be sustained. The contract here involved does not call for the granting of any franchise. Moreover, the Redevelopment Companies Law is one of state-wide application. It was designed " to promote cooperation between municipal government and private capital to the end that substandard, insanitary areas in our urban communities may be rehabilitated " (*Matter of Murray* v. *LaGuardia,* 291 N. Y. 320, 332, *supra*).

Section 20 of the statute (L. 1942, ch. 845; L. 1943, ch. 234, expressly provides for street areas included in the plan of a project: " A local legislative body, upon payment therefor or upon exchange for other lands, may convey to any redevelopment company land in any street or public place which is duly closed or discontinued pursuant to the plan of a project."

Section 15 of the law (L. 1942, ch. 845; L. 1943, ch. 234) states that where the plan receives the unqualified approval of the City Planning Commission, " approval thereof by the local legislative body may be by resolution adopted by a majority of the whole number of votes authorized to be cast by all of the members thereof ", otherwise approval shall be " by a three-fourths vote of the whole number of votes authorized to be cast by all of the members thereof ". The City Planning Commission issued the required certificate of approval and by express terms of the statute only a majority vote of the Board of Estimate was required.

3. Discrimination against Negroes. The claim is not made that the contract is invalid because it contained no provision against discrimination. Concededly, there is presently no statute in this State which prohibits discrimination by landlords except in cases coming under the provisions of the Public Housing Law (§ 223). Neither the Civil Rights Law nor article XVIII (the housing article) of the Constitution contains any provisions against discrimination in housing, although unsuccessful attempts were made to insert such a provision in the Constitution when it was considered by the Constitutional Convention of 1938. But it is strongly urged by the plaintiff that, although no present statute is applicable, any such discrimination would be illegal because it would constitute a denial of the equal protection of the laws in contravention of the provisions of the Federal and State Constitutions. To support this contention it is urged by the plaintiff that the redevelopment project, although undertaken by a private company, involves the exercise by the City of its public power of condemnation, the exchange of public property, and a limited tax exemption.

This question is not properly before the court at the present time. All that the complaint alleges is that it is the intention of the defendants, to the knowledge of the City, to discriminate against Negroes. From the affidavits submitted on the application for a temporary injunction it clearly appears that neither the directors of Stuyvesant nor the directors of Metropolitan have thus far adopted any renting policy and that they will have no occasion to do so until the project approaches completion, an event which cannot occur for several years to come. Mr. Ecker, the President of Stuyvesant and the Chairman of the Board of Metropolitan, and with his approval the Director of Housing Projects of the Metropolitan, did make statements to the effect that it was not the present intention to make provision for Negro families in the new housing project, which was " planned " to accommodate the type of tenants " predominantly resident in that section and the surrounding area of the city." Mr. Ecker states, however, that he was expressing his present personal opinion and that in any event the directors had taken no position in the matter.

A court of equity will not act in anticipation of possible future controversies, which may never take place. A temporary injunction is granted only when the menace is imminent, when the rights of a plaintiff are being presently threatened so that irreparable injury will result unless prompt, immediate relief is granted. Clearly there is no basis for a temporary injunction in this case and that application is denied.

The complaint itself fails to state a cause of action. It is on its face premature. The remedies sought by way of declaratory judgment and permanent injunction are not available where the danger or dilemma is not a present one, where it is contingent upon the happening of some future event which may never take place, where the controversy is not actual or present, but merely possible and remote (Borchard on Declaratory Judgments, pp. 36, 56). As the defendants forcefully point out in their briefs, Stuyvesant will have to perform its contract with the City in obedience to the fundamental law of the State and of the United States. If it adopts an illegal renting policy any person thereby aggrieved will have his remedy in the courts. In no event, however, could any action that may be taken by Stuyvesant in the future invalidate its contract with the City, a contract which on its face is legal and which must be performed in accordance with the mandate of our Constitution. The defendants specifically recognize that obligation. There can be no question of laches so far as aggrieved persons are concerned. The Constitution is supreme.

Taxpayers' actions in this State have been afforded a very broad scope. While it is not necessary now to decide the point, there is doubt as to whether even at the proper time a taxpayer's suit would be appropriate to raise the constitutional question of denial of equal protection of the law. In *McCabe* v. *A., T. & S. F. Ry. Co.* (235 U. S. 151, 161, 162), it was held that "the essence of the constitutional right is that it is a personal one." "The complainant cannot succeed," said Mr. Justice HUGHES, "because someone else may be hurt. Nor does it make any difference that other persons, who may be injured, are persons of the same race or occupation. It is the fact, clearly established, of injury to the complainant — not to others — which justifies judicial intervention." In any event, whether it be by taxpayer's suit, or by action on the part of individuals personally aggrieved, the time to seek judicial intervention with respect to any proposed discrimination has on the face of the complaint itself not yet arrived. The suggestion has been made that the present action by a taxpayer should be sustained because, at some future time, if the defendant companies find that they have been in error about the law and that they have not the powers of private management which they contend they possess, they may seek a rescission on the ground of mutual mistake of law (Civ. Prac. Act, § 112-f), and that in the meantime the City may have expended large sums to acquire some of the needed property by condemnation or have taken other action to its damage. Assuming that the complaint is

susceptible of any such interpretation, the possibility of such action or of its success is so remote and so speculative as not to warrant any present judicial intervention.

The motion for a temporary injunction is denied and the motions to dismiss the complaint are granted. Settle order.