Vincent D. Damiani, J.
Plaintiff moves for an injunction pendente lite restraining defendants from “referring, recommending and/or transporting any students attending P. S. 116, Brooklyn, New York, to Wyckoff Heights Hospital or any *881 other hospital or institution in violation of the provisions of the Medicaid Act, Title 19 of the Social Security Act of 1935.” Defendants cross-move to dismiss the complaint for insufficiency. Since the latter motion is supported by affidavits to which plaintiff responded, the court will consider the motion as one for summary judgment (CPLR 3211, subd. [c]; Kronish, Lieb, Shainswit, Weiner & Hellman v. John J. Reynolds, Inc., 33 A D 2d 366; Skorge v. County of Nassau, 33 A D 2d 782).
Plaintiff, counsel for the Doctors Association of the City of New York, brings this action pursuant to section 51 of the General Municipal Law in his own right as a taxpayer. The defendants are the Department of Health of the City of New York, its Commissioner, the Board of Education, its Principal at public school 116, and the City Department of Social Services.
The gist of plaintiff’s complaint and moving affidavit is as follows: While the Department of Health is mandated by law (New York City Health Code, § 49.05) to afford medical examinations in the schools for those children who have not been examined by a private physician, the defendants arranged for those students who qualify for Medicaid to be transported by school buses to the Wyckoff Heights Hospital for such examination, and those who are not Medicaid-qualified to be examined at the school by Department of Health physicians. The cost to the city for examining each child at the school is approximately $3.50, while the charge at the hospital is $35.57, of which sum the city pays 25% and the remainder is borne by the State and Federal Governments. This differential and the cost of transportation, including the time spent by paraprofessionals who accompany the children, are the waste charged by plaintiff. It is alleged and contended that the procedure violates the Medicaid Act since that statute specifically provides that those who qualify for Medicaid must have a free choice in the selection of their own doctors or hospitals. Further, that it stigmatizes the Medicaid children, thereby creating two classes of children and causes the children who qualify for Medicaid to lose time from classwork.
In opposition to the motion, the áffidavit of Dr. David Harris, Deputy Commissioner of Health, states that the program of preventive medicine was conceived, developed and implemented jointly by his department and the Board of Education to make certain that the best possible use is made of health resources throughout the city and to assure that all children receive high quality health supervision; that it was necessary to resort to the plan because of a serious shortage of medical personnel and that the policy adopted will assure the children adequate *882 preventive medical examinations where none might otherwise be available.
In her affidavit, Dr. Virginia Baker, the District Health Officer, states that when the program was conceived and developed it was discussed with representatives of community groups and individual parents to whom it was clearly explained that the program was a matter of free choice and that they could either accept or reject the procedure and that if they elected to participate, the parent’s written consent would be required. In every instance where a child was transferred to the hospital, such written consent was procured. A copy of the form of such consent is attached to her affidavit. It is written in both English and Spanish and affords the parent one of three options: (1) to have the child examined by the school doctor; (2) to take the child to a private doctor or (3) to have the child examined by the staff of Wyckoff Heights Hospital. Dr. Baker states it is her professional opinion that the program is of inestimable value as a health preventive measure since most of the children have not had a medical examination before and are not likely to receive one in the school by reason of insufficient medical and paramedical personnel. She avers that in the school year of 1969-1970, 184 newly admitted children were not examined and no fourth grade examinations were completed; that for 1968-1969 100 newly admitted children were not examined and only 8 fourth grade examinations were completed.
In his affidavit in opposition to the motion Henry Cash, Principal of the school, states that during the prior school year only about 50% of the newly admitted students were examined by Department of Health physicians, who came to the' school on an average of once or twice a month for sessions of two and one-half hours each. This, it is claimed, does not meet the legal mandate of the Health Code which is aimed at ascertaining medical disabilities and communicable and noncommunicable diseases which could be detected for the protection of the child examined and also the other children. The buses used for the transportation of the children are Board of Education buses which, together with the drivers, would otherwise be idle. The children are accompanied by paraprofessionals as well as a parent. The time of the paraprofessionals is not wasted since they would be performing services for the same children whether the examinations took place at the school or not; that many of the children come from families on welfare and could not afford the carfare to the hospital if the buses were not provided. By reason of the fact that the children are Medicaid eligibles, they may have certain important tests *883 not available at the school, such as sickle-cell anemia, urine analysis, 12 different types of blood tests, blood count and X rays. In many instances, this is the first physical examination the children ever had. Any child not a Medicaid eligible may also attend the hospital for such test but their parents would be required to pay for the services.
Plaintiff’s reply affidavit is primarily argumentative. He contends that since transportation is to a particular hospital and not to any other, there is no free choice. In addition to the differential in the cost between a Medicaid examination and that of an examination conducted at the school, it is contended that there is further waste since the physicians at the hospital do not afford immunization shots without a further charge and the hospital refuses to make the necessary medical records required by law to be kept for each child; that as a consequence the Department of Health and the Board of Education are required to expend further moneys for making such records. In addition it is urged that the buses may be involved in accidents as a consequence of which the city will be subjected to actions for damages for personal injuries. In a further argumentative vein plaintiff contends that the procedure is discriminatory against the Medicaid eligibles since it is stigmatic while at the same time it discriminates against those not eligible. As a solution, plaintiff avers that, as counsel to the Doctors Association, he is in a position to state that if the compensation of the Board of Health physicians were increased to $25 an hour, sufficient numbers would be available to take care of all of the needs of all the children in the city schools and that they would be willing to work more than two and one-half hours a day; that this procedure would be considerably less expensive than that followed pursuant to the plan evolved. Plaintiff also alludes to a fact not alleged in the complaint, that some of the physicians at Wyckoff are not licensed as required by section 49.05 of the Health Code. A similar “ solution ” to the problem suggested by plaintiff is advanced in the affidavit of Donald C. Meyer, president of the Doctors Association.
The complaint, insofar as it relates to the Board of Education and its Principal at the school, is insufficient on its face. A Board of Education is not a municipal corporation within the meaning of section 51 of the General Municipal Law and therefore a taxpayer’s action may not be maintained against it. (Schnepel v. Board of Educ. of City of Rochester, 302 N. Y. 94.) In Schnepel (supra, p. 96) the court expressly repudiated the contrary dictum expressed in Lewis v. Board of Educ. of City of N. Y. (258 N. Y. 117) which was the predicate for the holding in *884 Judd v. Board of Educ. (278 N. Y. 200). (See, also, Matter of Rumble v. Board of Educ. of City of N. Y., 27 Misc 2d 939.)
Nor is there any merit to the action as to the remaining defendants. Clearly as evidenced by the ‘ ‘ consent form ’ ’ the parents of the children are afforded a free choice of medical examination and there is therefore no violation of the Social Security Act.
Plaintiff’s argument that the plan is illegal in that it creates two classes of children, suggesting that it violates the constitutional requirement of equal protection of the laws, is baseless. “ The prohibition of the Equal Protection Clause goes no further than the invidious discrimination.” (Williamson v. Lee Opt. Co., 348 U. S. 483, 489.) The procedure adopted by defendants is no more discriminatory than the basic philosophy of welfare assistance whereby grants are given only to those persons requiring it. Moreover, plaintiff’s contention is not one that may be advanced by him. The authorities are legion that in the absence of a personal wrong to a party, the constitutionality of legislative or executive action may not be reviewed by the courts. (St. Clair v. Yonkers Raceway, 13 N Y 2d 72; Bull v. Stichman, 273 App. Div. 311, affd. 298 N. Y. 516; Schieffelin v. Komfort, 212 N. Y. 520, 530; Pratt v. La Guardia, 182 Misc. 462, affd. 268 App. Div. 973; Smith v. City of Buffalo, 191 Misc. 439.) This principle was succinctly stated in Matter of Donohue v. Cornelius (17 N Y 2d 390, 397) where the court urged: “ While it is true that St. Clair involved a challenge to a legislative act, not an executive act, and that St. Clair was a proceeding for declaratory judgment, not an article 78 proceeding, the rule of law with which we are dealing is too broad to be so easily distinguished. It is' a rule of law designed to prevent the courts from giving judicial interpretations of legislative acts or executive rulings in the absence of injury or threatened injury to one’s personal rights. ’ ’
The court is of the opinion that the instant action is clearly without merit in that the complaint is insufficient on its face. “ Redress may be had in * * * a taxpayer’s action ‘ only when the acts complained of are fraudulent, or a waste of public property in the sense that they represent a use of public property or funds for entirely illegal purposes.’ ['Citing cases.] ” (Gaynor v. Rockefeller, 15 N Y 2d 120, 133-134.) It is evident that, in the case sub judice, the expenditures of public funds are for a legal purpose. The defendants are charged by law (N. Y. City Health Code, § 49.05) to see to it that each student, upon admission, has a thorough medical examination by a doctor of his own choice, failing which, he is to be examined by a *885 licensed physician in the school. However, section 45.21 of the Health Code provides, inter alia, that when strict application of any of the provisions of article 49 presents “ practical difficulties, or unusual or unreasonable hardships ” the Commissioner may modify the application of such provisions consistent with the general purpose and intent thereof upon such conditions as in his opinion are necessary to protect the health of the children. Having exercised his discretion, neither the court nor plaintiff may substitute his judgment for that of the Commissioner so as to provide a plan which he deems is more provident or less costly. As phrased in Talcott v. City of Buffalo (125 N. Y. 280, 286), the court, in speaking of the statute which permits taxpayers’ actions, stated: “The terms ‘waste’ and ‘ injury ’ used in this statute comprehended only illegal, wrongful or dishonest official acts, and were not intended to subject the official action of boards, officers or municipal bodies acting within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident or based on errors of judgment, to the supervision of the judicial tribunals.”
As for the contention that there was a violation of section 49.05 of the Health Code in that some of the physicians at Wyckoff Heights Hospital are not licensed, it is to be observed that pursuant to section 6512 (subd. 1, par. a) of the Education Law physicians employed by a hospital may under certain conditions function under a temporary permit. There is no showing by plaintiff that the physicians referred to by him are not permitted to conduct the examinations of the children. In any event, under the provisions of section 45.21 of the Health Code the Commissioner is authorized in his discretion to have the examinations conducted by the physicians employed by the hospital because of the ‘ ‘ practical difficulties ’ ’ engendered by the shortage of Board of Health physicians at the school.
Accordingly, plaintiff’s motion for temporary injunction is denied and summary judgment is granted to defendants dismissing the complaint.