Herbert D. Hamm, J.
This is a proceeding under article 78 of the Civil Practice Act seeking to reverse a determination of the commissioner under section 1511 of the Education Law in refusing to approve the consolidation of two school districts and seeking also to require the direction of a vote on the proposed consolidation.
Subdivision 1 of section 1511 provides: “Whenever two-thirds of the qualified electors of each of two or more districts in which there shall be less than fifteen qualified electors, or if there be fifteen or more qualified electors in any of such dis *681 tricts whenever ten or more of such electors, shall sign a request for a meeting to be held for the purpose of determining whether such districts shall be consolidated as a common school district or as a union free school district, as the case may be, and submit the same to the trustees or board of education of each of such districts, it shall be the duty of such trustees or board of education to submit such proposed consolidation to the commissioner of education for approval. If the commissioner approve such proposed consolidation, it shall be the duty of such trustees or board of education to give public notice that a meeting of the qualified electors of such districts will be held at some convenient place within such districts, as centrally located as may be, to vote upon the question of consolidating such districts.” (Emphasis supplied.)
The commissioner received petitions from large numbers of voters of Union Free School District No. 1 of the Towns of Brookhaven and Smithtown in Suffolk County and of Union Free School District No. 2 of the Town of Brookhaven, Suffolk County, for a consolidation vote under section 1511.
Section 314 was added to the Education Law by chapter 723 of the Laws of 1956, effective April 1, 1956. As pertinent it provides: “ The commissioner of education is hereby authorized to continue the investigations, study and review carried on by the joint legislative committee on the state education system in order to bring up to date the Master Plan For School District Reorganization (legislative document number twenty-five of nineteen hundred forty-seven); to make such studies and surveys as are necessary to review periodically and maintain such plan currently; to hold hearings in relation to affected areas for the purpose of eliciting the expression of opinion, cooperation and assistance of the inhabitants of such areas; and to make recommendations for school district reorganization so as to assure the most efficient and economical provision of educational facilities for such areas. Such recommendations shall be principally directed toward the reorganization of areas in and around the city school districts of cities having less than one hundred twenty-five thousand inhabitants, the reorganization of the remaining common and union free school districts not included in such urban and suburban areas and the reorganization of the smaller central school districts. The commissioner of education is hereby authorized, further, to amend such master plan as established by such joint legislative committee on the basis of his investigations, study and review, by orders made by him and entered in his office.”
*682 On page 762 of Legislative Document No. 25 of 1947, there is a proposal for the establishment of a central school district to comprise 13 school districts including districts Nos. 1 and 2 herein. Pursuant to the authority conferred on him by section 314 to continue studies and to make recommendations so as to assure the most efficient and economical provision of educational facilities the commissioner has been engaged in analyzing and considering a five-district centralization and an eight-district centralization, both of which would include the two districts involved in this petition. His investigations and surveys were motivated by the increase in school population in the area comprising the 13 school districts contained in the proposal on page 762 of the Master Plan For School District Reorganization.
It is not disputed that there is a need for the construction of elementary school buildings in both districts. As a matter of fact the pupils in one of the districts are now on double sessions. But the overcrowding relates only to students in the elementary classes; as to high school students there is no problem.
On November 14, 1957, the commissioner declined to approve the proposed consolidation and his views were expressed in a letter by his associate commissioner. Among other things the associate commissioner stated that it had been consistently recommended that more territory be included in the finally organized school district than districts Nos. 1 and 2 because these districts could not in the foreseeable future provide sufficient enrollment to justify a full program of education at a reasonable cost. He was concerned that a two-district consolidation adoptéd as a temporary expedient would militate against subsequent approval of a preferable solution of longer range. He was also of the opinion that a vote at this time would be premature because of the danger of its being based on a hastily conceived and ill-advised device to accomplish an end of overcrowding without due consideration of future educational and financial implications. It was his judgment that an informed vote could not be had in the absence of additional factual information and a comparison of figures and computations as to two-district, five-district and eight-district centralization. He said: “We urge that immediate steps be taken by the boards of education in Stony Brook and Setauket (Brookhaven #1 and #2) to distribute the data prepared by Superintendent Ormsby to the citizens in these districts, so that the final decision, when made, may be in full view of the known facts.”
The petitioner considers the grounds of the refusal to approve a formal vote of the two districts to be arbitrary and further contends very urgently that the declination of approval so con *683 tinues and augments overcrowding in the elementary schools that it must be deemed to have been unreasonable. But there is no proximate causation between the commissioner’s exercise of his veto power and provision for additional housing for pupils in elementary grades. While both districts are in need of additional elementary school construction, the districts both have the power without consolidation and without prevention by the commissioner to build such elementary schools as they wish and, as mentioned, there is no overcrowding as to high school students.
The respondent has raised an additional issue by paragraph thirteenth of his answer: “That by action of the Board of Regents of the University of the State of New York, Union Free School District No. 2 of the Town of Brookhaven received a high school charter; that, therefore, the Commissioner of Education could not prevent the establishment of a high school in said district upon his approval and the approval of the voters of the consolidation sought in this proceeding; that if the voters of such consolidated district thereafter voted to build and operate a high school therein, that this would most seriously interfere with, if not prevent, the establishment of either a five-school district reorganization or an eight-school district reorganization, as the voters could not be reasonably expected to wish to maintain two high schools in a new central school district.” This allegation is denied by the petitioner except that the petitioner admits that district No. 2 has received a high school charter.
Section 1514 of the Education Law provides: ‘ ‘ When two or more districts shall be consolidated into one, the new district shall succeed to all the rights of property possessed by the annulled districts.” It is unnecessary to decide the question of whether or not a high school charter is a right of property possessed by a district. Neither is it necessary to decide whether the commissioner pursuant to some discretionary power of statutory interpretation (cf. Matter of Colson v. Allen, 285 App. Div. 797, 798; Matter of Kieval v. Wilson, 285 App. Div. 1203, 1204, appeal dismissed 1 N Y 2d 663; Matter of Ross v. Wilson, 308 N. Y. 605; Matter of Kuhn v. Commissioner of Educ., 1 A D 2d 533, 536-537, appeal dismissed 2 N Y 2d 749) would or would not be, in a legal sense, arbitrary in concluding that a high school charter is a right to which a new consolidated district would succeed. The reasons given on behalf of the respondent commissioner by his associate commissioner are quite adequate.
The wisdom of the Legislature in conferring veto power on the commissioner may be debatable as may be also the wisdom of the Legislature’s “ Master Plan ”, but the commissioner is *684 authorized by law to revise and augment the plan and, in the exercise of his veto power in furtherance of his general scheme under the law, I cannot find that he acted arbitrarily.
The petition is dismissed. Submit order to chambers at Troy on three days’ notice. The motion papers will be forwarded with the signed order.