Louis G. Bruhn, J.
This is a proceeding pursuant to article 78 CPLR to review a determination of the Commissioner of Education of the State of New York by which such Commissioner refuses to certify that an apportionment of State aid under subdivision 6 of section 3602 of the Education Law of the State of New York will not impede reorganization.
The usual claim is made that such determination on the part of the Commissioner is wholly arbitrary, capricious and without reasonable grounds.
The enabling section of the Education LaAv for court review of the Commissioner’s determinations is found in section 310 thereof.
The Court of Appeals in the case of Matter of Board of Educ. v. Allen (6 N Y 2d 127, 136) graphically explained the restricted area in Avhich such review is contained when it said: “If the *510 words of section 310 were to be read literally there could be no court review whatever of the Commissioner’s decisions on appeal, for the statute states that his decision ‘ shall be final and conclusive, and not subject to question or review in any place or court whatever. ’ However, our court has determined that the Legislature did not intend that the words are to be so read. Thus, we have said that ‘ decisions by the Commissioner of Education are final unless purely arbitrary ’. (Matter of Ross v. Wilson, 308 N. Y. 605, 608, emphasis supplied; Matter of Levitch v. Board of Educ., 243 N. Y. 373, 375.) The term ‘ arbitrary ’, standing by itself, would be quite sufficient to make it plain that only a narrow review of the Commissioner’s decisions is available in the courts. In the above-cited cases we undertook to emphasize the point by employing the phrase ‘ purely arbitrary ’. With this rule as our guide we turn to a consideration of the issues to be resolved.” (Italics supplied.)
The most logical approach to a consideration of the issues to be resolved in this proceeding is to trace historically the efforts of the district toward reorganization as well as the efforts of the Legislature toward solving some of the problems facing local school districts.
The Master Plan for School District Reorganization of the Joint Legislative Committee on the State Education System in its Legislative Document No. 25 (1947) on page 890 thereof recommended a combination of five union free school districts and five common school districts as a proposed central school district. Provision was likewise made for an alternative plan.
Based on the recommendations of the so-called Heald Committee, the Legislature mandated the respondent to bring and keep up to date the 1947 Master Plan. To carry out the legislative ukase the respondent appointed a committee of 17 which established a new Revised Master Plan in 1958.
Thereafter, two central school districts were laid out, voted and established apparently in partial fulfillment of the two proposals in the Revised Master Plan and in accordance with the original 1947 alternative proposal.
One of such centralizations comprised Union Free School Districts Nos. 7 and 8 of the Town of Mount Pleasant, and Common School District No. 11 of the Town of Mount Pleasant, which in December, 1958 merged into Central School District No. 1 of the Towns of Mount Pleasant and North Castle, Westchester County, leaving only the petitioner’s district to be added to said Central School District to complete the Revised Master Plan proposal.
*511 While it is true that as early as 1950 union free school and other districts could receive emergency school building aid under section 3603-c of the Education Law no such aid even then would be available to union free school districts unless the Commissioner certified that the facilities needed to meet such requirements would be fully utilized after the reorganization of any proposed central district and also unless he also certified that such construction would not impede such centralization and reorganization.
Such provisions apparently have no direct bearing on the instant issues since they never were invoked.
However, it might be noted that from 1925 until 1961, only central school districts were entitled to school building State aid other than emergency aid.
Such legislative plan or scheme apparently was by design as an incentive for school districts to reorganize to provide a sufficient pupil and tax base to supply educational availabilities in rural and suburban areas comparable to the facilities of the larger urban centers.
Such was the law until 1962 when, on the recommendation of the Diefendorf Committee, paragraph a of subdivision 10 was added (L. 1962, ch. 657) to section 3602 of the Education Law.
Such section now provides, in part: 11 a. District subject to reorganization. No apportionments pursuant to subdivision six of this section shall be paid to any school district which is scheduled for reorganization pursuant to a feasible plan of reorganization, unless the commissioner shall certify that an apportionment pursuant to subdivision six will not impede such reorganisation, and the failure or refusal of the commissioner to make any such certification shall be subject to review, pursuant to the provisions of article seventy-eight of the civil practice act ”. (Italics supplied.)
Bather than being intended as an aid to the petitioning district it impresses this court that such section was enacted to jolt such districts out of their lethargy and apathy and encourage them to reorganize rather than continue to go it alone.
Instead of the usual positive incentive payment procedure a negative or withholding procedure which in a sense is a penalty procedure was invoked.
Apparently the word “ impede ” was likewise selected by design so as to make the determination of the Commissioner somewhat easier in allowing the aid to the co-operative districts and deny it to those who have been dragging their feet as it were.
In the light of the petitioner’s lack of concrete action toward joining the centralized district after all these years it most cer *512 tainly can be said that to grant the aid would definitely impede the reorganization pursuant to both the Master and Revised Master Plans.
As a matter of fact within this factual context the discretion of the Commissioner would be more susceptible to a determination of being arbitrary if aid were granted because certainly if it were little likelihood of the culmination of the Revised Master Plan could be anticipated.
The fact that relief under article 78 is specificially provided in the section apparently gives the petitioner little solace since the yardstick to be employed apparently remains the same.
Since no tenable argument can be advanced that the Revised Master Plan is not feasible this court must conclude that the action of the Commissioner was not purely arbitrary and therefore the petition is dismissed and the determination of the Commissioner confirmed, without costs.