Frederick B. Bryant, J.
In this action the plaintiffs seek both a declaratory judgment pursuant to CPLR 3001 and 3017 (subd. [b]) and further seek an adjudication declaring the deed given pursuant to a sale to be null and void, that all proceedings of the school district leading up to the delivery of said deed be rescinded, that the defendants, William S. Downing, Jr. and Elaine Downing, make restitution of school property and respond to the Ithaca City School District in damages and that *596 the school district retake possession of the property by reconveyance.
All defendants have moved for a dismissal of the complaint on the ground that it fails to state a cause of action and the defendant, Ithaca City School District, moves on the further ground that the plaintiffs have no legal capacity to sue. For purposes of this motion, the factual matters alleged in the complaint, as distinct from the conclusory allegations, are deemed true and, so far as material, are recited herein.
Prior to the sale which is the subject of this action, the school district owned property known as DeWitt Junior High School, located close to the central business district of the City of Ithaca. Having determined that said school building was no longer suitable for its purposes, the school district’s board of education caused a new building to be constructed at a different site and students attending DeWitt were transferred to the new school commencing September, 1971.
At a meeting of the board on May 12, 1971, it was resolved that the former building and site were no longer needed for school purposes and that the premises be abandoned and sold. The proposed sale was to be advertised widely and sealed proposals for purchase were to be submitted. The form of purchase proposal drafted was extremely simple and the board reserved the right to reject any and all bids. On the date the bids were to be opened, only one offer was received — that of the defendant, William S. Downing, Jr. Defendant Downing offered to purchase the premises for $20,000, subject to two conditions — One, that he be able to secure a variance in the zoning laws to permit conversion of the building to residential apartments and commercial uses, and two, that he be able to secure the required financing.
The board deferred action on Downing’s proposal and solicited bids for demolition of the building. The lowest offer received for demolition was one for $55,555.55.
On July 23, 1971, the board appointed an advisory committee of disinterested citizens to consider the sale value of the property. On July 27,1971, the committee reported that it estimated the value of the land to be $122,100' and that yearly maintenance cost of the building would be $35,000. The committee recommended that Downing’s offer be seriously considered, with a time limit of September 20, 1971, the date the low bid for demolition would expire.
On August 4, 1971, the board received an offer from the Savings Bank of Tompkins County to buy the land, clear of *597 structures, for $122,100. On the same date the board, by majority vote, determined it would accept Downing’s offer. In reaching its decision the Board considered the following factors: (1) The $35,000 annual cost of maintaining the building; (2) the limited time for action; (3) the lack of any extensive evidence of interest on the part of prospective buyers; (4) the potential tax revenues to be expected from Downing’s conversion of the property to commercial purposes and on which he was to expend approximately $500,000; and (5) the sentiments of the townspeople that the building should be preserved if possible. The board noted that although some $66,000 in cash would be realized from the Savings Bank’s offer, it could obtain no information as to the Bank’s intended use of the land and the effect thereof on school tax revenues.
On September 8, 1971, Downing submitted a formal offer, the two conditions having been resolved, and the board formally accepted the offer the next day. Included in the contract of sale was a commitment by Downing that he would expend an estimated $500,000 on renovation and rehabilitation of the building and would restore the building to the tax rolls. The board deeded the property to the defendants, William S. Downing, Jr., and Elaine T. Downing, on October 4, 1971, and the Downings commenced work on the conversion of the property to commercial use.
Belying on conclusory allegations that the “ reasonable value ” of the land and Wilding was nearly Two Million Dollars, the plaintiffs assert that they, as taxpayers, are damaged to the extent of some $7.30 per $1,000 of the assessed valuation of their respective properties. They assert that the sale was a 1 ‘ gift ’ ’ in violation of section 405 of the Education Law and section 1 of article VIII, of the New York State Constitution; that it was in violation of sections 402 and 403 of the Education Law since no referendum was held prior to sale; and that the sale of the school premises is a detriment to the public interest. They also complain of alleged irregularities in the solicitation and consideration of bids. Most of these allegations are mere conclusions and, as will be discussed later, were evidently included in an attempt to avoid the case law of this State that the plaintiffs have no standing to sue.
The plaintiffs here describe themselves as taxpayers and the complaint as a whole, regardless of how it is described, is clearly framed as a taxpayer’s action. The gravamen of the plaintiffs’ complaint is that because of improvident and allegedly illegal acts of the Ithaca City School District their tax assessments will be in some measure adversely affected. No other *598 claim to any direct injury can be found in the complaint. The defendant, School District, asserts that its motion to dismiss must be granted because, first, a taxpayer has no right of action against a school district; second, relief by way of declaratory judgment is not available as to these plaintiffs; and third, a private citizen cannot challenge the validity of a governmental act unless it directly affects his private rights.
Section 51 of the General Municipal Law is the statutory basis for a taxpayer’s right of action against “ officers * * * of any * * * municipal corporation in this state * * * to prevent any illegal official act * * * or to prevent waste or injury to, or to restore and make good, any property ”. The Court of Appeals in Schnepel v. Board of Educ. of City of Rochester (302 N. Y. 94) held that a Board of Education is not a municipal corporation and thus is not subject to suit by taxpayers under this statute. That ruling is still the law of this State. (See, Glass v. Department of Health, 64 Misc 2d 880.) As the Board of Education acts for the school district the law applies to school districts as well as to their boards of education.
As authority for the contention that declaratory relief is not available to these plaintiffs the defendant school district relies on Bull v. Stichman (298 N. Y. 516). In that case a citizen-taxpayer sought a declaratory judgment to the effect that an allocation ,of funds by a State agency to a sectarian institution was unconstitutional. The upper courts affirmed dismissal of the complaint at Special Term on the ground that the plaintiffs had shown no special rights or interest in the matter other than those common to all taxpayers and hence had no legal capacity to sue. That is the situation in the instant case.
Matter of Donohue v. Cornelius (17 N Y 2d 390) and cases discussed therein support the contention that a private citizen cannot challenge the validity of a government act unless his private rights are affected.
Clearly under the rule of Schnepel (supra) and the other cases cited by the defendants, the plaintiffs here have no standing to sue unless they can bring themselves under some exception in which the Schnepel rule has been distinguished and the action allowed to proceed. This is what the plaintiffs attempt to do by alleging monetary damages, great public interest, violation of statute and constitution and the like. They argue that while Schnepel may stand for the proposition that a taxpayer has no right of action against a school district concerning use of a school, he does have such a right of action where waste is alleged. They also maintain that, although the plaintiffs describe *599 themselves as taxpayers and observed the formal requirements of section 51 of the General Municipal Law for commencing a taxpayers’ suit, they are not really relying on section 51 for relief. They cite such cases as Mancuso v. Board of Educ. (282 App Div. 1097); Corbett v. Union Free School (199 Misc. 930, affd. 278 App. Div. 960); Anderson v. Board of Educ. (135 N. Y. S. 2d 189); Levert v. Central School Dist. (24 Misc 2d 833, affd. 10 A D 2d 975); Ofenloch v. Gaynor (66 Misc 2d 185, affd. 35 A D 2d 913); Bloom v. Mayor of City of N. Y. (35 A D 2d 92, affd. 28 N Y 2d 952) to support their argument that regardless of the form of action they have standing to demand a declaratory judgment.
The court has carefully considered these and other cases and concludes that they in no way overturn the rulings of the highest court of this State as exemplified in Schnepel (supra), Bull (supra) and Matter of Donohue (supra). Mancuso involved the constitutionality of taxing procedures directly affecting the plaintiff; Corbett was concerned with the issuing of bonds and levying of taxes, again directly affecting the plaintiff; Levert and Ofenloch both charged the violation of a statute with direct consequences to the plaintiffs. Bloom challenged the constitutionality of a ruling by the State Board of Equalization and the court held the action could proceed as the plaintiff taxpayers were directly aggrieved. Even though these cases may be said to in some degree dilute the holding in Schnepel they have no applicability to the complaint here. It is true that the plaintiffs have charged violation of statute and constitution but, as will be shown hereafter there was no such violation in the proceedings which led to the sale of DeWitt Junior High School. Further, there are no legal relationships between the parties to this litigation which are properly subject to declaratory relief. The complaint fails to show that the plaintiffs here were in any way aggrieved in their personal rights in a manner differing from any other taxpayer.
The plaintiffs rely heavily on Matter of Ross v. Wilson (308 N. Y. 605) in support of their contention that the sale to Downing was unlawful. The legal and factual background of that case are so different from the situation here that the case cannot be considered in point. Matter of Boss involved the sale of an abandoned schoolhouse by the voters of a common school district after the formation of a central school district. Two offers for the school house were received — one for $2,000 from a church and the .other for $3,000 from the local Grange. By a vote of 32 to 24 the voters accepted the $2,000 offer. On appeal *600 by the minority to the Commissioner of Education the latter sustained the sale. An article 78 proceeding was brought before Special Term, which annulled the Commissioner’s action. Special Term was reversed by the Appellate Division. The Court of Appeals, by a four to three vote, reversed the Appellate Division and reinstated the Special Term decision.
Much of the lengthy opinion in Matter of Ross in the Court of Appeals goes beyond the issues involved. The crux of its decision is stated at page 613: “ the majority were limited by statute to utilizing the assets of the school district for educational purposes or to distributing them among the taxpayers. Any other disposition would be beyond the powers conferred upon a school district, and illegal — and would therefore infringe the rights of the minority. ’ ’
The distinguishing features of Matter of Ross v. Wilson (supra) as compared with the situation under review here are obvious. Under the controlling statute in Matter of Ross (Education Law, § 1804, subd. 6) the net proceeds of the sale were to be divided among the taxpayers, and thus each had a direct financial stake in the sale. That was not so here. Article 51 of the Education Law which governs city school districts does not give the taxpayers of the city school district any direct financial interest in the proceeds of the sale of surplus school property. In Matter of Boss the two offers received were for exactly the same property — school house and the real property on which it stood. Here one offer was for the real property clear of structures and one for land and building combined. For reasons which the board considered sound, in particular the fact that the property would be converted to the status of a substantial taxpaying structure immediately, the board decided to accept the Downing bid. It does not seem to this court that this action of the board can be termed discriminatory in the sense that the court criticized acceptance of the low bid in Matter of Ross. This simply reflected the board’s judgment of what was ultimately in the best interest of the taxpayers.
The defendants, William S. Downing, Jr., and Elaine T. Downing, also move to dismiss the complaint on the ground that it fails to state a cause of action. This motion must be granted. There are no allegations in the complaint which by any interpretation could be construed to charge the D ownings with wrongdoing on which the plaintiffs are entitled to relief. There is no claim of bad faith, collusion or fraud. The Downings, acting in good faith, submitted a purchase offer to the board. Such offer was duly considered by the board, certain conditions rel *601 ative to its acceptance were imposed and met and a deed was duly executed and delivered. In reliance on the validity of this conveyance the Downings have already made extensive expenditures to fulfill their commitment to renovate and rehabilitate the building and restore it to the tax rolls. No acts on their part have been alleged which were a cause of any direct damage to these plaintiffs and they are not within that class of persons against whom it is contemplated that a taxpayers’ action pursuant to section 51 of the General Municipal Law, will lie. As to these defendants the complaint fails to state a cause of action and is dismissed.
The school district also moves to dismiss the complaint on the ground that it fails to state a cause of action. With this contention the court also agrees.
The basis of the complaint is that the board acted improvidently in selling school property with' an alleged value of nearly $2,000,000 for only $20,000. The complaint also alleges violations of sections 402, 403 and 405 of the Education Law and the State and Federal Constitutions, together with irregularities in the solicitation of the sale and the consideration of offers of purchase.
The first question is whether the board had the power and authority to make the sale as it did. The board’s authority is found in subdivision 1 of section 2511; subdivisions 1 and 5 of section 2512 of the Education Law. Those sections form part of article 51 of the Education Law. Nowhere in article 51 is there any requirement that a sale by the Board of Education of Ithaca City School District is subject to any referendum or vote by the taxpayers. Sections 402 and 403 of the Education Law do require a vote by the inhabitants of a school district. But these sections have no application here. Article 51 was enacted as section 3 of chapter 762 of the Laws of 1950 (as amd. by L. 1951, ch. 789). Section 4 of said chapter 762 provides:
‘ ‘ Except as otherwise provided in this act, all statutes, local laws, ordinances, rules and regulations, insofar as they relate to the matters contained in sections three and twenty-three of this act, are hereby superseded, it being the legislative intent that these sections of this act shall constitute the exclusive law in such matters.” If for no other reason than that the enactment of sections 402 and 403 of the Education Law, antedated the enactment of chapter 762 of the Laws of 1950, they have no bearing on this case.
This court holds that the board had clear statutory authority to sell the DeWitt School as it did. This is not to say that public *602 property may be disposed of freely and without regard to the interests of the taxpayers. The complaint itself describes fully and fairly the endeavors of the board to achieve the best bargain under the circumstances. The board did solicit bids, even though there is no statutory requirement to do so. The fact that conditional offers were received and considered has no bearing on the legality of the board’s action. Further, the court finds nothing in the Education Law that would forbid the board from looking to the interests of the taxpayers by weighing the effect on the school tax rolls of choosing one buyer over another and, in fact, deems that such considerations are evidence of the exercise of the good business judgment on which plaintiffs insist.
Section 1 of article VIII of the State Constitution forbids a school district from making a gift to a private individual. Clearly the transaction here was a sale and calling it a “ gift ’ ’ does not make it so. Section 405 of the Education Law provides for transfers of school property to public corporations. That section has no relevance here. There was never any pretense that Downing was a public corporation or that the property was to be devoted to a public use. The exact opposite is true. Downing undertook to convert the property to a commercial use by expending some half million dollars on it and to restore it to the tax rolls.
The rule has been long established that the ££ waste” and ££ injury ’ ’ contemplated in taxpayers ’ actions embrace only illegal, wrongful or dishonest official acts and that it was not intended to subject the official actions of boards and officers acting "within the limits of their jurisdiction and discretion, but which some taxpayer might conceive to be unwise, improvident or based on errors of judgment, to the supervision of judicial tribunals. (Talcott v. City of Buffalo, 125 N. Y. 280; Gaynor v. Rockefeller, 15 N Y 2d 120; Fisher v. Becker, 32 A D 2d 786.)
This court finds, on the basis of the allegations of the complaint, that the defendant School District acting through its Board of Education, was within its legal authority in selling and conveying the school property which is the subject of this suit. Under such circumstances the complaint must be dismissed. As was said in Gusdore Corp. v. Michaels (13 Misc 2d 762, 764, affd. 8 A D 2d 663): ££ Averments which amount only to a taxpayer’s disagreement with the way in which administrative judgment and discretion are exercised by a municipal body are insufficient to invite judicial interference.” The allegations of the complaint as to improvidence, poor business judgment, failure to make a better bargain, and the like reflect a *603 difference of opinion between the plaintiffs and the duly elected Board of Education which had the responsibility of disposing of the property. This court will not sit in judgment upon the board’s decision.
The motion to dismiss the complaint is granted.