■ In the Matter of NEW CITY JEWISH CENTER, Appellant, v BARBARA FLAGG et al., Constituting the Board of Education of the Clarkstown Central School District, et al., Respondents. — In a proceeding pursuant to CPLR article 78 to review a determination of the respondent board of education regarding the sale of a vacant parcel of real property owned by the respondent Clarkstown Central School District, the petitioner appeals from an order and judgment (one paper) of the Supreme Court, Rockland County (Gurahian, J.), dated February 6, 1984, which dismissed the petition.

Order and judgment affirmed, without costs or disbursements.

The issue which divides the court on this appeal is whether a board of education may, in the discharge of its fiduciary duty to the taxpayers of a school district, properly consider the future tax consequences of a proposed sale of unneeded school property in determining which of two nearly identical offers will result in the sale of such property for the best possible price. We believe that it may.

After soliciting bids, the Board of Education of the Clarkstown Central School District (hereinafter the board) agreed to sell a certain parcel of unneeded property owned by the school district to R & R Construction for $50,000, notwithstanding the fact that the petitioner, the New City Jewish Center, had bid an additional $2,000 for the property. Prompting this decision was the fact that the successful bidder proposed to restore the property to the tax rolls by constructing residences thereon, whereas a sale of the property to the petitioner would generate no additional ratables. Petitioner alleged, *inter alia,* that by accepting the technically lower bid, the board had exceeded its lawful authority, since it was duty bound to obtain the best possible price for the property and, therefore, was without the power to reject the

higher bid of a responsible bidder. In addition, petitioner maintained that the board's consideration of the future tax consequences of the proposed sale constituted an unlawful exercise of the zoning power. We disagree.

In *Matter of Ross v Wilson* (308 NY 605), the Court of Appeals held, *inter alia,* that a board of education is charged with the fiduciary duty of disposing of unneeded school property for the "best price obtainable in [its] judgment for any lawful use of the premises" (*supra,* p 612), and that it may not exercise its discretion arbitrarily, e.g., to accept a lower bid, based on extraneous considerations such as favoritism and the like (*supra,* pp 613-614). In addition, the court opined that a board may not lawfully exercise its discretion to reject a higher bid merely because the proposed use of the property, although legal, is perceived to be less desirable to the community, since such considerations are properly reserved to the zoning authorities (*supra,* p 611). In our view, *Matter of Ross v Wilson* (*supra*) is not controlling in the case at bar.

It is clear that in the instant case the board did not act to accept the facially lower bid of R & R Construction based on extraneous considerations such as favoritism, nor is it tenable to argue on the present state of the record that the board's decision was based upon any perception that the proposed use of the property by the petitioner (for a parking lot) was in any way objectionable or undesirable to the community. Rather, the board expressly found that the proposed use of the property by the successful bidder, combined with the present underutilization of existing school facilities, would result in the maximum financial gain to the district with little or no adverse impact on its operating budget. In fact, according to the affidavit in opposition of the district's treasurer, the school tax revenues generated by the property in the hands of the successful bidder in just one year, even without a variance, would more than make up for the slight discrepancy in the initial purchase price. Thus, the board's determination was, as Special Term found, an informed decision, which ultimately resulted in the acceptance of the bid ringing the greatest amount of revenue into district coffers, i.e., the sale of property on the " 'most beneficial terms' " (*see, Matter of Ross v Wilson,* 308 NY 605, 612, *supra,* quoting from *Kane v Girard Trust Co.,* 351 Pa 191, 196; *cf. Merritt Meridan Constr. Corp. v Gallagher,* 96 AD2d 933).

Clearly, the *Ross* case (*supra*) did not involve any consideration of the prospective tax consequences of the proposed sale of realty, nor did the court therein purport to restrict the definition of "highest" or "best" price to exclude a good-faith consideration

of such factors in a creditable effort to exact the highest rate of return from the property. Such considerations were, however, specifically approved in an opinion of the State Comptroller (1978 Opns St Comp No. 78-262, p 32), and have received some prior judicial recognition as well (*see, Berkey v Downing*, 68 Misc 2d 595, *affd* 39 AD2d 1008, *lv denied* 31 NY2d 643). Under the circumstances of this case, we can see no bar to employing a similar rationale here.

We have considered petitioner's remaining contentions and find them to be without merit. Mollen, P. J., Gibbons and Rubin, JJ., concur.

Weinstein, J., dissents and votes to reverse the order and judgment appealed from, and thereupon to grant the petition to the extent of annulling the determination of the respondent Board of Education of the Clarkstown Central School District (hereinafter the board), and directing the board to enter into a contract for the sale of the subject parcel to petitioner, with the following memorandum: The Clarkstown Central School District (hereinafter the district) is the owner of an approximately one-acre tract of vacant land located in a residential zone on Old Schoolhouse Road in the hamlet of New City. An old three-story schoolhouse, which had previously been situated on the premises, was leveled as a result of a fire in January 1981. Although the district thereafter attempted to sell the subject parcel, the sole offer received was less than the appraised value of $34,000. It was thereupon determined that the parcel would be withdrawn from the market with the expectation of procuring a better price at a future date.

In April 1983, the district obtained an unsolicited proposal from R & R Construction offering to purchase the parcel for $48,000. Upon receipt of said offer, the district solicited updated appraisals of the property and pursued those who had expressed an interest in the parcel when it had been on the market in 1981. By mid-May 1983, the district received offers from petitioner New City Jewish Center, R & R Construction and a local builder named George Miller who was doing business under the name of Endura Homes, Inc. All three offers were for approximately $49,000. Because of the similarity of the offers, the board solicited sealed, noncontingent written offers from the three prospective purchasers, setting forth both the offering price and intended usage. The board's interest in the proponents' intended uses was consistent with its concern over the twin problems of escalating taxes and declining enrollment. The board apprised each of the three prospective purchasers that its ultimate determination would be based upon "the highest offer as well as the

intended use which, in its discretion, may prove most beneficial to the District and its residents".

In response to the board's solicitation, petitioner made an offer of $52,000. It explained that inasmuch as it had undertaken a major expansion program to benefit the entire community of Clarkstown, it needed the subject tract to expand its parking facilities and to alleviate congestion in the area. Petitioner expressed an intention to work with the town regarding the possibility of using the facility as a commuter parking area. R & R Construction submitted a bid of $50,000 with the intent to erect a 4- to 6-unit complex of one bedroom apartments if a variance could be obtained. R & R Construction noted that its proposed use could net the town $10,000 and indicated that it intended to use the property for two residential building lots.

On June 27, 1983, the board first met in executive session and then conducted a public hearing at which it resolved, by a 5 to 2 vote, to sell the parcel to R & R Construction. The board concluded that the intended use of the property by R & R Construction would result in the creation of additional tax ratables thus increasing the real property assessment roll. Even if the project resulted in additional school-age children being brought into the district, the potential for generating additional taxes exceeded the potential cost of educating such additional children. In contrast, a sale of the property to a religious organization such as petitioner would keep the property off the tax rolls and eliminate any possibility of reducing the real property tax rate for the taxpayers within the district.

Petitioner thereafter commenced the instant CPLR article 78 proceeding seeking a judgment annulling the board's determination and directing it to sell the subject property to petitioner for $52,000. Petitioner also sought a preliminary injunction barring respondents, during the pendency of the underlying proceeding, from selling the property and from erasing any voice transcription made of the June 27, 1983 meeting.

The court dismissed the petition finding that the board's consideration of intended use did not constitute an unlawful exercise of zoning power. Rather, it found that the board's consideration of future tax consequences was consistent with its fiduciary duty to promote the best interests of all taxpayers of the district. The court deemed it particularly significant that petitioner made "no suggestion of an arbitrary exercise of discrimination or favoritism" on behalf of the lower bidder.

I disagree and object to the far-ranging implications of Special Term's decision. The creation of tax ratables is not a power which the Legislature has invested in educational authorities.

To uphold Special Term's decision in the instant case is to condone respondent board's usurpation of the town zoning and planning boards' legitimate functions.

A board of education is clearly empowered to sell and convey real property when such course of action is in the best interest of the school district (Education Law § 2511 [1]). In selling school property, the board has a fiduciary duty to secure what is, in its judgment, the best price obtainable for any lawful use of the premises (*Matter of Ross v Wilson,* 308 NY 605, 610; *Matter of Baker,* 14 Ed Dept Rep 5). The board has discretion to determine the best price for which the subject parcel can be sold and to condition the sale on such terms as, in its judgment, would maximize the financial benefits accruing to the school district. While the board is also empowered to direct the method of sale to be utilized, its discretion is by no means unbridled (*Merritt Meridian Constr. Corp. v Gallagher,* 96 AD2d 933, 934). Although a public body has broad discretion to determine whether an offer represents the best price obtainable for the property, it has no choice but to accept the highest offer submitted from a responsible bidder for a lawful use (*Matter of Ross v Wilson, supra,* p 611). Pursuant to the reasoning of the Court of Appeals as expressed in *Matter of Ross v Wilson* (*supra*), where a higher offer from a responsible bidder has already been submitted to the board, as was the case here, there is no room for the exercise of discretion. Accordingly, the board's sale of the subject property to respondent R & R Construction constituted a misuse of its authority.

As this court has itself noted, "after the board exercises its discretion as to the method of sale and the bid specifications, its duty, absent the retention of the right to reject any and all bids, is to accept the highest, responsive offer proffered from a responsible bidder for a lawful use" (*Merritt Meridian Constr. Corp. v Gallagher, supra,* p 934). Although the instant case, unlike *Merritt,* does not involve the acceptance of a lower bid whose terms were substantially and materially at variance with the advertised bid specifications, the general principles expressed therein are nevertheless applicable to this case. Moreover, "since the property in question was not adjacent to a school, the lawful use to which the property would be put by the vendee is not an educational consideration empowering the board to depart from the performance of its duty to accept the highest responsive offer" (*Merritt Meridian Constr. Corp. v Gallagher, supra,* p 935).

In my view, the respondent board has blinded itself to considerations of traffic congestion and public safety. The road upon

which the subject parcel is situated is a narrow one capable of accommodating one lane of traffic in each direction. The width of the road does not permit the parking of cars without interfering with the flow of traffic in both directions. R & R Construction's proposed use is much more likely to aggravate this situation rather than to ameliorate it. Moreover, the benefits which would allegedly emanate from the developer's proposed use are contingent upon its ability to bend the applicable zoning laws to its advantage. Should R & R Construction be unsuccessful in doing so, the arguments advanced on its behalf would be seriously weakened. It is my conclusion, based on these circumstances, that the board has failed to place the best interests of the school district above the parochial interests of competing developers (*see, Matter of Baumann & Sons Buses v Board of Educ.*, 46 NY2d 1061, 1064 [Jasen, J., dissenting]). Accordingly, I vote to reverse the judgment under review.

To the extent that *Berkey v Downing* (68 Misc 2d 595, *affd* 39 AD2d 1008, *lv denied* 31 NY2d 643) is at variance with the guidelines set forth by the Court of Appeals in *Matter of Ross v Wilson* (*supra*), I respectfully take issue with that holding.