THE YONKERS RAILROAD COMPANY, Appellant, *v.* THE CITY OF YONKERS and Others, Respondents.

Second Department, October 29, 1926.

Municipal corporations — bus route — action to restrain city of Yonkers from selling certain franchises for bus routes within city — action is based on alleged illegality of ordinance — provision in ordinance, authorizing city to reject bid if not satisfied with good faith and responsibility of bidder, violates Second Class Cities Law, § 37, requiring sale to highest bidder — such provision would deter bidders — provisions in ordinance that bidder accepts conditions of ordinance and waives defense of ultra vires, are invalid — provision that bidder would operate any portion of route specified by Public Service Commission is invalid — purchaser is not obligated to accept route substantially changed by Public Service Commission — provision requiring successful bidder to apply to board of estimate and apportionment of New York city for consent to operate in connection with subway station is not invalid — injunction pendente lite granted.

This action was instituted to restrain the city of Yonkers from selling certain franchises for the operation of bus routes within the city and is based upon the alleged illegality of the ordinance authorizing the sale. A provision in the ordinance that the common council reserves the right to reject any and all bids if not reasonably satisfied with the good faith, responsibility and legal capacity of the bidders, violates section 37 of the Second Class Cities Law, which requires that an ordinance authorizing the sale of franchises must provide for the disposition of the same at public auction to the highest bidder under proper regulations as to security. The city did not have the right to reject any bid because it was not satisfied with the good faith or responsibility of the bidder, and those provisions in the ordinance would have the effect of deterring people from bidding on the franchises.

The fact that the provision is illegal and that the highest bidder can enforce his right to be awarded the franchise, is not material in an action to restrain the sale, for the sale must be conducted in such a manner as not to stifle competition.

Another provision in the ordinance that the bidder, by bidding on the franchises, accepts all conditions and recitals· of the ordinance and waives any rights to claim that the contract was *ultra vires*, is likewise invalid and would operate to deter competition.

A further provision that the successful bidder would be required to operate any portion of a route purchased which is sanctioned by the Public Service Commission, is improper, since no bidder will be required to operate a route made substantially different by the Public Service Commission from that actually sold by the city; the purpose of this provision evidently was to compel the purchaser to accept a franchise he did not buy and which the common council did not sell.

**7**

The provision requiring the successful bidder on certain routes to make application to the board of estimate and apportionment of the city of New York for a franchise or consent to operate motor buses connecting with certain subway stations in the city of New York, and if the franchise should be granted and a certificate of convenience and necessity be granted by the Transit Commission, the extensions of the route would be operated as part of the original route without any extra fare, is not invalid on the ground that it would deter any one from bidding, for a connection with the subway would probably increase traffic and be an attraction. Nor would a franchise thus sold be indefinite and uncertain.

Plaintiff's motion for an injunction *pendente lite* is granted.

APPEAL by the plaintiff, The Yonkers Railroad Company, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 15th day of September, 1926, denying plaintiff's motion for an injunction *pendente lite*, enjoining and restraining the defendants (city of Yonkers and common council thereof) from selling certain bus franchises, on the ground that the ordinance directing the sale thereof is a violation of section 37 of the Second Class Cities Law, requiring that every franchise granted by the city must be sold at public auction to the highest bidder.

The plaintiff brought the action as a taxpayer pursuant to section 51 of the General Municipal Law.

*Alfred T. Davison* [*Addison B. Scoville* with him on the brief], for the appellant.

*Arthur C. Hume, Corporation Counsel* [*Joseph W. Bryan* and *Thomas F. Sullivan* with him on the brief], for the respondents.

*Robert M. Clark,* for the Merchants Community Bus Transit, Inc., as *amicus curiæ.*

JAYCOX, J. It will be unnecessary, for the purpose of this decision, to quote *in extenso* the ordinance which is the subject of the attack herein. Only those provisions which, it is claimed, violate section 37 of the Second Class Cities Law will be quoted. The statute in question provides: " In case of a proposed sale or lease of real estate or of a franchise, the ordinance must provide for a disposition of the same at public auction to the highest bidder, under proper regulations as to the giving of security and after public notice to be published once each week for three weeks in the official paper or papers." The ordinance defining the terms and conditions under which said franchises are to be sold at public auction contains the following provisions in section 3 of the ordinance: " (3) The Common Council reserves the right to reject any and all bids if not reasonably satisfied with the good faith, responsibility and legal capacity of the bidder or bidders; " and " (2) A

bid received at said public auction is to be regarded, by the submission of such bid, as the express acceptance by said bidder of the conditions and recitals of this ordinance and of the contract hereinbefore recited as though the same were embodied specifically in each bid."

The language of the statute under which it is proposed to make this sale seems to be clear and unequivocal. The sale must be made to the highest bidder. If doubts are entertained as to the " good faith, responsibility and legal capacity of the bidder or bidders " the city must protect itself by such terms of sale as are necessary, and not by the reservation of the right to reject the bid.

This subject has already been passed upon by our courts, which have held that the franchise must be sold to the highest bidder and the acceptance of any other bid is illegal. (*Trojan Railway Co.* v. *City of Troy*, 125 App. Div. 362; affd., *sub nom. Trojan Railway Co.* v. *Mann*, 195 N. Y. 614.)

The court, at Special Term, held this provision of the ordinance to be illegal, but held that the same might be disregarded upon this motion, because it was " so patently illegal that its presence does no harm and should not result in an injunction restraining the sale. If the common council makes an award to any bidder except the highest one, the latter will have a clear legal right to the award, and his remedy will be by mandamus." (128 Misc. 108, 112.) The answer to this, I think, is that this is a proceeding prior to the sale, and the purpose of it is, at least so far as this court is concerned, to strip the ordinance of all provisions which would, in any way, deter any one from bidding at the proposed sale. If the terms of sale contain a provision authorizing the common council to reject bids and award the franchises to bidders other than the highest bidders it necessarily acts as a deterrent upon bidding. The fact that the highest bidder may be obliged to resort to mandamus to procure what he is entitled to, under the law, is made apparent by this provision. He is warned that, instead of securing what he is entitled to by the highest bid, he may be obliged to resort to a law suit for that purpose. That this will be the result is indicated by the fact that, notwithstanding the holding of the Special Term that " the common council has no discretion and must award the franchise, as far as the council is concerned, to the highest bidder complying with its regulations as to security," the defendants are now before this court still urging that this provision is valid and that it is not compelled to award the franchise to the highest bidder. This situation is emphasized and accentuated by the other provision, by which the bidder, by the submission of his bid, accepts the " conditions and recitals of this ordinance." This is an attempt to have the bidder waive, in advance, the right to have the franchise

awarded to the highest bidder. The Special Term, very properly, held that this clause and another clause, contained in section 3 of the proposed contract as set forth in section 2 of the ordinance, waiving any right to claim that the contract was *ultra vires*, were invalid, but he held them harmless, saying: " The clauses suggesting it will, therefore, work no detriment to any bidder. The court will not enforce an executory agreement by a bidder which is to the effect that he will not hereafter make these contentions, and that he will refrain from asking the court to pass upon them." A decision to that effect would, no doubt, be a proper decision and adequate to the situation if made in litigation arising after the sale of the franchise. The purchaser might be required to accept the franchise, notwithstanding these provisions, but I think the court is concerned with more than the granting of a franchise which the purchaser must accept. It is concerned in seeing that the sale is not hampered with unnecessary legal difficulties and problems, and competition thus stifled.

The object of the statute is clearly to obtain as large a percentage as possible upon the sale of these franchises. (*Beekman* v. *Third Avenue R. R. Co.*, 13 App. Div. 279, 282.) These illegal restrictions are well calculated to defeat that purpose.

The ordinance also contains this provision as a part of the conditions of the proposed contract: " In the event that the Public Service Commission grants a certificate of public convenience and necessity for a portion only of the route herein specified, the successful bidder does nevertheless agree to operate the said route or portion thereof for which the certificate of public convenience and necessity shall have been granted." In my opinion, under the Public Service Commission Law (§ 53, as amd. by Laws of 1921, chap. 134) the Public Service Commission is not obliged to grant the exact route applied for. It may make changes in the route, but those changes must not be of such a character as to make the route approved a different route from the route granted by the common council. If the changes made by the Public Service Commission are thus limited, the purchaser of the franchise would be obliged to accept it and carry out his contract notwithstanding the changes. He would be obliged to do this without the provision above quoted. In the event that the Public Service Commission shall make such radical changes and modifications in the route applied for, so that it could not be said to be the same route, the purchaser would not be obliged to accept it. This provision was inserted, apparently, to meet that contingency. The purpose for which this provision was inserted, necessarily, was to bind the purchaser to do something he would not have been bound to do if that provision had not been inserted. The purpose of it, therefore, cannot be mistaken. It was to compel

the purchaser to accept a franchise he did not buy and which the common council did not sell. This violates the statute (Second Class Cities Law, § 37), which requires the sale of franchises at public auction to the highest bidder. To state the proposition in another way: If the route approved by the Public Service Commission is the same route for which the common council sold the franchise, then this provision is unnecessary; if the route approved is different, then it has not been sold in accordance with the statute and the purchaser should not be compelled or permitted to accept it by reason of any provision in the ordinance. This proposition seems to me to be so clear that it does not need the support of those cases which hold that, in all propositions requiring public bidding, the description of the article sold or the work and materials to be furnished must be definite, certain and not subject to change after the bids have been accepted. However, I call attention to the following, which are illustrative of this principle: *Gage* v. *City of New York* (110 App. Div. 403); *Hart* v. *City of New York* (201 N. Y. 45); *Grace* v. *Forbes* (64 Misc. 130); *Kuhn* v. *City of Buffalo* (84 id. 157). (See, also, Dillon Mun. Corp. [5th ed.] § 807.)

As to certain of the franchises (routes Nos. 2, 3, 4, 5 and 12) a provision is inserted requiring the successful bidder to make application to the board of estimate and apportionment of the city of New York for the franchise or consent to operate motor buses connecting with certain subway stations in the city of New York, and if a franchise is granted and if a certificate of convenience and necessity is granted therefor by the Transit Commission, such extensions are to be operated as parts of the above-mentioned routes, without any extra fare. The distinction between this and the provision last above quoted is not broad, but I think one exists. In so far as this provision is concerned, the route sold is definite and fixed. In addition to the percentage bid, the purchaser promises to do something else. What he is to do is not uncertain, but it is uncertain whether he will succeed in accomplishing it. What the purchaser is to try to do is a known factor in the light of which the bids are made. I am unable to say, as a matter of law, that this provision would deter any one from bidding. The connection with the subway would probably increase traffic and be an attraction, but the provision forbidding an increase of fare might be a detriment. The end sought is desirable and the means by which it is to be accomplished are set forth, and under these circumstances I think it cannot be said that the franchise sold is indefinite and uncertain.

All the other points raised by the briefs have had our careful consideration and we are of the opinion that they have all been correctly disposed of by the court at Special Term.

The order denying the motion for an injunction *pendente lite* should be reversed upon the law, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

KELLY, P. J., MANNING and YOUNG, JJ., concur; LAZANSKY, J., concurs in the result.

Order denying motion for injunction *pendente lite* reversed upon the law, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.