Samuel W. Eager, J.
We have here a motion by the respondents to dismiss a petition in an article 78 proceeding, it being claimed by them that the petition is insufficient on the face thereof to entitle the petitioners to any relief.
The proceeding is brought to secure an order in the nature of a mandamus order directing the City of Yonkers, and the Mayor and Common Council thereof, to accept the bid of the petitioners for the purchase of a city-owned parcel of real property. It appears that the property was put up for sale at a public auction thereof called and held pursuant to the provisions of section 37 of the Second Class Cities Law and Special Ordinance No. 105 of the city enacted on April 8, 1958.
Said section 37 of the Second Class Cities Law, provides: “ § 37. Disposition of real estate: franchises. No ordinance shall be passed making or authorizing a sale or lease of city real estate or of any franchise belonging to or under the control *1041 of the city except by vote of three-fourths of all the members of the common council. In case of a proposed sale or lease of real estate or of a franchise, the ordinance must provide for a disposition of the same at public auction to the highest bidder, under proper regulations as to the giving of security and after public notice to be published once each week for three weeks in the official paper or papers * * *. Such notice shall contain a statement of the time and place where all bids received in pursuance thereof will be publicly opened and read, and pursuant to such notice, all bids received shall be publicly opened and read at the time and place so specified. A sale or lease of real estate or a franchise shall not be valid or take effect unless made as aforesaid and subsequently approved by a resolution of the board of estimate and apportionment or other governing body.”
Said Special Ordinance No. 105 of the City of Yonkers provided, among other things, that “ (4) The sale or sales made herein shall not be valid unless and until approved by resolution of the Common Council.”
The auction sale of the property was duly held on May 9,1958, and the petitioner Klevens, bidding for the petitioner U. S. Shipbuilding Corporation, was one of several bidders at the same and his final bid of $535,000 was the highest bid. The property was knocked down to him and he paid a deposit of 10% of his bid. He signed terms of sale, providing among other things, that, ‘ ‘ 1. The Common Council reserves the right to reject any bid for any reason whatsoever and the City’s sole obligation shall be to return to the purchaser the amount of the deposit paid.”
The matter of the approval of the sale of the property to petitioner U. S. Shipbuilding Corporation in accordance with its bid, duly came before the Council, and, according to the petition, the said Council at a stated meeting held on June 10, 1958, by a vote of 12 to 1, rejected the bid of the said petitioners and has refused to consummate the sale. It is the claim of the petitioners that the Council lacked the power to reject the high bid for the property, and that, in any event, its action in rejecting the bid and in refusing to consummate the sale is illegal, discriminatory and arbitrary.
The petition does allege (par. “Tenth”): “That the auction sale having been made pursuant to law, the Common Council of the City of Yonkers was without power to reject the highest bid received and accepted at that sale.” Such allegation is, of course, wholly conclusory, and it is decided that the con *1042 elusion, as a general one, is not warranted. Generally speaking, the conferring upon a public board or officer of the authority and duty of approving an act affecting the public interest carries along the right of disapproval. The requirement that such an act be ‘ ‘ approved ” by a board or officer before it shall be effective generally implies that the board or officer shall exercise reasonable judgment and discretion in determining whether or not the act shall stand. (See Brown v. City of Newburyport, 209 Mass. 259.) Here, by virtue of the provisions of the Second Class Cities Law and of the local ordinance calling for the approval by the Council of the sale following the receipt of the bids at the public auction, it is clear that the Council did have the right to withhold approval if required or deemed advisable in the honest exercise of discretion in the interest of the municipality. Certainly, the provisions for approval of the sale do not contemplate a mere pro forma ministerial act to follow the sale as a matter of course without regard to the public interest. It is concluded, therefore, that there is no merit to the broad and general claim of the petitioners that the Council was without the power to reject their bid for the property in question.
It is true that the Council, having discretion in the matter, was called upon to exercise the same fairly and honestly, and it did not have the right to pick and choose arbitrarily between persons seeking to purchase the property. It was mandatory upon the Council; if it disposed of the property, to let it go to the highest bidder, and it would not have the right to reject the petitioners’ bid for the purpose of selling the property to-another person at a lower bid. (See Matter of Ross v. Wilson, 308 N. Y. 605; Yonkers R. R. Co. v. City of Yonkers, 218 App. Div. 97.) However, it does not appear from the petition here that the Council has taken any action toward disposing of the property to another at a lower bid or that there is in contemplation any such action. All that appears is that the Council has rejected the bid of the petitioners, thereby nullifying the sale as an entirety; and from all that appears, this may very' well be in the public interest.
If we accept the allegations of the petition as true, as we should on this motion, the situation is in fact such that the sale should not stand. It is alleged (par. “ Eleventh”): That the Common Council had previously determined the identity of the purchaser to which they wished the property sold, that the auction sale was conducted as a mere device tó transfer such property to said previously selected purchaser, and that the *1043 Common Council rejected the highest bid for the reason that it was not submitted by the previously selected purchaser.” If these allegations be true, the underlying purpose of the sale was contrary to public policy, and all proceedings looking toward the same are invalid. Clearly, public policy disapproves of an arrangement between municipal authorities and a person interested in municipal property whereby the property will be put up at a public auction sale with the understanding that the sale of the property will be completed only in the event the said person is the successful bidder. A sale directed and held pursuant to such an arrangement, “asa mere device to transfer such property to said previously selected purchaser” (as alleged here), being contrary to law and public policy, would not generally be sustainable in favor of any purchaser, whether or not he be the previously selected purchaser. (Cf. Deed Realty Corp. v. City of Yonkers, 1 Misc 2d 280.) If, as the petitioners argue (quote from their brief) that the Council was ‘ ‘ utilizing the public auction as a mere device to effectuate the ‘ private ’ sale previously agreed upon, a sale which could not legally be made directly ”, then the sale, called and held for an unlawful purpose, is invalid and no rights may stem therefrom. Therefore, assuming the truth of the particular allegations, the petitioners may not succeed. Their bid at a sale, which is invalid, may not be enforced.
In any event, the petitioners are not possessed of any right enforcible by mandamus. As heretofore noted, the duty of the Common Council in determining whether or not the sale of the municipally owned property to the petitioner U. S. Shipbuilding Corporation should be approved, was to act honestly in the public interest. The duty in this regard was one owing to the city and the people at large thereof, and not for the benefit of the petitioners or other particular individuals. And, as noted above, the petitioners did expressly agree to terms of sale providing that the Council reserved the right to reject “ any bid for any reason whatsoever.” Clearly, a party may release or waive his right to question action to be taken by public officials within the scope of their powers, whether or not the action may be discriminatory or arbitrary in nature; and he will be held bound by such release or waiver unless otherwise dictated by public policy. Thus (in view of the agreement of petitioners), the Council was under no obligation whatew to the petitioners, and mandamus does not lie to compel v. Council to act in their favor. (See East Riv. Gas-Light Co. v. Donnelly, 93 N. Y. 557, 562; see, also, People ex rel. Gaffey v. Fobes, 151 App. Div. 245.) Finally to grant relie4*0
*1044 tioners as requested, would amount to the court’s taking over the exercise of the discretion in the matter of approval of the sale which was granted by statute to the Council (and not to the court); and this the court may not do. (See People ex rel. Shay v. McCormack, 167 App. Div. 854.)
It follows from the foregoing, that the petitioners do not have the clear right necessary to support the granting to -them of relief sought. It is a salutary rule that an order in the nature of a mandamus order to compel action by public officials should not be granted in the absence of a showing of a clear legal right to the relief sought. (People ex rel. Schwab v. Grant, 126 N. Y. 473, 482; Matter of Fahey v. Wright, 256 App. Div. 474; Matter of Solomon v. Public Service Comm., 286 App. Div. 636; Roy v. Board of Educ. of City of N. Y., 106 N. Y. S. 2d 451.) Certainly, the petitioners here make no such showing. Petition dismissed. No costs.
Settle order on notice.