■ ARNOLD TARSHIS, Appellant, v. CITY OF NEW YORK et al., Respondents, et al., Defendants.— In an action by a taxpayer to vacate a sale by auction of real property owned by defendant City of New York to defendant Congregation Zichron Joseph, the plaintiff appeals from the following two orders of the Supreme Court, Richmond County: (1) an order entered August 4, 1964, which (a) granted the motion of the defendant Congregation Agudath Achim Anshe Chesed (assignee of the buyer) to dismiss the complaint on the ground that it fails to state a cause of action; and (b) denied plaintiff's motion for summary judgment; and (2) an order entered September 10, 1964, which (a) granted the motion of the defendants City of New York and its officials to dismiss the complaint on the same ground; and (b) denied plaintiff's motion for summary judgment. Orders modified: (a) by striking out all the decretal paragraphs, except the provisions therein which deny "plaintiff's motion for summary judgment;" and (b) by substituting therefor in each order a provision denying

the motion to dismiss the complaint. As so modified, orders affirmed, with $10 costs and disbursements to plaintiffs. The time of the defendants-respondents to serve their answers is extended until 30 days after entry of the order hereon. It is alleged in the first cause of action of the complaint that the defendant City of New York limited the bidding to nonprofit corporations and prescribed, as a term of the sale, that the property was to be used solely for religious and educational purposes; and that, accordingly, plaintiff's bid of $9,000 was rejected and the lower bid of defendant Congregation Zichron Joseph at the upset price of $8,500 was accepted. In our opinion, the stated restrictive classification of acceptable bidders and the consequent rejection of plaintiff's bid, if proved, would constitute a violation of the New York City Charter (§ 384, subd. b). This subdivision declares that, "Except as otherwise specifically provided by law," real property of the city may be sold "only for the highest marketable price * * * at public auction". The city had no right to reduce competition in the bidding, which was the effect of its restriction of bidders to those within the stated class, and thereafter to reject the highest bid (cf. *Matter of Ross* v. *Wilson*, 308 N. Y. 605). As stated in *Ross* (*supra*, p. 613), it does not matter that the amount involved is small; "the principle is important." (See, also, *Yonkers R.R. Co.* v. *City of Yonkers*, 218 App. Div. 97; *Matter of Klevens* v. *City of Yonkers*, 15 Misc 2d 1040, 1042.) Cases such as *64th St. Residences* v. *City of New York* (4 N Y 2d 268) are not apposite. They involved sales of substandard and insanitary land areas under former section 72-k (now § 507) of the General Municipal Law. That statute permitted the sales to be made subject to covenants insuring that the property would be used for purposes consistent with the applicable plans for rehabilitation of the areas in question. However, even that statute required that the property be sold at "the highest marketable price * * * at public auction," and in none of such cases was there a restrictive classification as to bidders, such as here; nor was there a rejection of a bid higher than the one accepted. Since the motions were for dismissal of the entire complaint and since the first cause is valid, the motions should be denied in their entirety, and therefore we do not pass on the propriety of the other two causes of action (*Hoch* v. *Glen Garden Homes*, 22 A D 2d 704). Christ, Hill and Rabin, JJ., concur; Ughetta, Acting P. J., not voting; Benjamin, J., dissents and votes to affirm the orders, with the following memorandum: I am constrained to respectfully differ with my distinguished colleagues who have joined in the majority decision of the court. By this decision, this court is enunciating a doctrine of far-reaching consequence. In my opinion, this doctrine is at variance with the expressions of the Court of Appeals; it breaks with the accepted practices of the past which have come into being in the public interest; and it is in conflict even with the position of the plaintiff himself on the question in issue. The plaintiff, therefore, now finds himself the victor upon a theory which he himself disclaims as untenable. At issue is the right of the Board of Estimate of the City of New York, in the light of the city's charter provisions (New York City Charter, § 384, subd. b), to direct that the sale of city-owned land shall be subject to restrictions which operate to reduce competition, and, in consequence, reduce the price achievable in an open auction free of such restrictions. As indicated in the majority opinion, the restrictions imposed limited the bidders to nonprofit corporations and confined the future use of the property to religious and educational purposes. These restrictions, my colleagues have decided, constitute a violation of subdivision b of section 384 of the New York City Charter, which provides that: "except as otherwise specifically provided by law," real property of the city may be sold "only for the highest marketable price * * * at public auction". Had the majority decision been bottomed upon the constitutional ground of violation of the

principle of the separation of church and State (the basis for plaintiff's appeal), the question might not be free of doubt, even though this doubt seems to have been laid to rest by the various decisions of the Court of Appeals to which I shall make reference herein. My colleagues, however, prefer to place their decision squarely upon the broad general ground that any restriction which prevents the city from receiving the highest price obtainable, in full and open competition in the market place, is in violation of the New York City Charter (§ 384, subd. b). No exception is made even for the most beneficent, non-sectarian philanthropic agencies whether they be schools, youth centers, day camps, orphanages, old-age homes, mental health clinics, hospitals, colleges or universities. As the law is now enunciated in this decision, even such agencies would not have the right to acquire city-owned land other than in absolute competition with entrepreneurs bidding for the opportunity of economic development for profit of the land being offered for sale. I do not believe such a narrow interpretation of subdivision b of section 384 of the New York City Charter is or should be the law. Plaintiff in his brief (p. 6) specifically disclaims such interpretation of the City Charter as has now been made by my colleagues. I quote from his brief as follows: "Appellant does not contend that the City of New York might not impose certain restrictions on the class of bidders or the use to which property might be put. What is contended is that the above restriction which restricts the usage of the property *solely for religious and educational* purposes is inconsistent with the clear provision of the New York State Constitution and the New York City Charter. Education has long been recognized as a function of the State and its subdivisions and a restriction providing that the property must be used for educational purposes would have been consistent with the City Charter and the State Constitution." (Emphasis in original.) The majority opinion, however, goes beyond plaintiff's own claims and makes a determination which strikes down the validity of the sale even for educational purposes, despite the fact that the plaintiff himself concedes that a sale with such a restriction would have been perfectly valid. In our society of private enterprise, the eleemosynary institutions, sponsored and operated by private agencies, are encouraged to come into being and flourish in the furtherance of the general welfare. We afford real estate tax exemptions to such agencies and we grant income tax deductions to those who support them even when they are dedicated to purely religious purposes. Since a civilized society requires philanthropic, cultural, educational, welfare and health agencies to serve its citizens, such agencies, if they were not created and maintained by private philanthropies, would necessarily have to come into being and be supported through government and the tax-dollar. Enlightened community planning, recognizing the desirability of such privately supported agencies, traditionally has assisted in making available land upon which cultural centers, colleges, universities, community centers and health institutions could be built. Such enlightened planning and practices have brought into creative action great amounts of private philanthropic funds which otherwise would have to be provided out of the public treasury. A corporation engaged in the business of constructing or operating a shopping center, industrial building, office building or high-rise apartment in the City of New York obviously can afford to bid higher prices for scarce land than a school or hospital dependent for its very being upon the largesse of benevolent individuals. Must we hold that the law must be so construed as to maximize the competition for such land even though it may mean exclusion of our cultural and social agencies from the opportunity to come into being and expand in order to meet the continuing unmet needs of our exploding population? It seems to me that the decisions of our courts are dispositive of this question even though the majority of the

court perceives a distinction which to me is not apparent. In the majority opinion, my learned colleagues say: " Cases such as *64th St. Residences* v. *City of New York* (4 N Y 2d 268) are not apposite. They involved sales of sub-standard and insanitary land areas under former section 72-k (now § 507) of the General Municipal Law. That statute permitted the sales to be made subject to covenants insuring that the property would be used for purposes consistent with the applicable plans for rehabilitation of the areas in question. However, even that statute required that the property be sold at 'the highest marketable price * * * at public auction,' and in none of such cases was there a restrictive classification as to bidders, such as here; nor was there a rejection of a bid higher than the one accepted." A reading of the cases hardly supports the distinction made by the majority. Subdivision b of section 384 of the New York City Charter certainly provides no exception which would justify the sales under similar restrictions to Fordham University, New York University, Long Island University and numerous other institutions, while prohibiting the instant sale under identical restrictions. In *64th St. Residences* v. *City of New York* (*supra*, p. 276), the applicable principle is well expressed by Chief Judge Desmond in the following language: " Any collegiate institution could have been a bidder at the auction. Special Term pointed out, probably correctly, that Fordham would be deprived of constitu-tional rights if it alone were excluded from the bidding. Perhaps this is only another way of saying that, since this sale is an exchange of considerations and not a gift or subsidy, no ' aid to religion ' is involved and a religious corporation cannot be excluded from bidding. At some points in their argument plaintiffs seem to be questioning the validity of the whole system of selling these prop-erties at auctions where there is little likelihood of competing bids. That con-tention must be rejected (see *Kaskel* v. *Impellitteri*, 306 N. Y. 73, 95, *supra* — dissenting opinion but representing the whole court's views on that question; and see *Bleecker Luncheonette* v. *Wagner*, 286 App. Div. 828, motion for leave to appeal denied 309 N. Y. 1029)." In the *Bleecker Luncheonette* case (*supra*), the rationale for permitting such a sale to New York University was stated in the following language by the Special Term (141 N. Y. S. 2d 293, 300–301): "The most that can be read into plaintiff's objection as to public bidding is that the terms of the sale may limit competition. However, in that respect, it has been held that it is proper to restrict competition where it serves the public interest. In *Knowles* v. *City of New York*, 176 N. Y. 430, at page 437, 68 N. E. 860, at page 862, it was said: 'That the commissioners intended by the specifications to limit the class of bidders is unquestionable, * * * but the imposition of such limitations, so far from being fraudulent, may have been dictated, and presumably were dictated, solely by regard for the advantage and interest of the municipality.'" It seems quite clear, therefore, that by the decision now being enunciated by the majority, they are departing from the historical recognition by our courts that the principle of sound community planning grants the right to set aside available land in good faith for use by philanthropic agencies in the public interest. The majority opinion relies primarily upon *Matter of Ross* v. *Wilson* (308 N. Y. 605). An examination of that case indicates that it was decided by a four to three vote on the very narrow ground of the limitations placed upon school districts with respect to educational funds under the Education Law of the State of New York. In that case, the school district undertook to give preference to one nonprofit organization, to wit, a church, over another nonprofit organization, to wit, a local farm grange; and this, the majority of the court said, could not be done. No such question is posed in the instant case. The power to limit a sale to a

particular eleemosynary class has been supported time and time again as indicated in the cases cited herein; such power is deeply imbedded in the social and juridical philosophy of our community. All that section 384 of the New York City Charter requires is that all the agencies within the restricted class be afforded a fair opportunity to bid competitively as to each other. This section does not impose the requirement to bid competitively in unlimited and unrestricted competition in a fierce, entrepreneural economy. It does not require proof to demonstrate how impossible it would be for a hospital to acquire a large tract of land in the Borough of Manhattan in competition with builders seeking such land for 100-story skyscrapers. Obviously, sound community planning requires the avoidance of such exclusionary competition. While the instant decision affects a religious agency, the impact of the determination falls with like force upon every philanthropic agency which serves our people and which requires adequate land to render proper service. A reversal of our juridical and social trends to achieve such exclusion of opportunity does not appear to me to be either a desirable or legal result. I vote to affirm the determination of the court below.