Milton Mollen, J.
The plaintiffs, Majed Tayar and Robert W. Thabit, moved to stay the defendant City of New York (hereinafter referred to as “City”) from selling Lot 70 in Block 789 (hereinafter referred to as Lot 70) at public auction.
Defendants cross-moved for summary judgment dismissing the plaintiffs’ complaint.
On the return date of the motions, plaintiffs orally moved for summary judgment.
Plaintiff Tayar brought this action to compel the “City” to consummate a sale to him of Lot 70 while plaintiff Thabit sued for a brokerage commission. In the alternative, plaintiffs sought $1,400 damages for loss of profit and punitive damages of $100,000 together with a counsel fee of $5,000 for plaintiff Tayar. The defendant, B. Hollander & Son, the auctioneer, is only incidentally mentioned by the parties since they recognize the “ City ” as the primary defendant.
*613 At a public auction sale held by the “ City ” on January 22, 1969 Lot 70 was knocked down to plaintiff Tayar’s highest bid of $3,600. This bid was immediately rejected because of complaints of others that their higher bids had been ignored and the bidding was reopened. Lot 70 was then knocked down for a bid of $4,700 made by a Mr. Frank Perotta. The “ City ” refused to accept a down payment from plaintiff Tayar or enter into a memorandum of sale with him. Instead, over plaintiffs’ protests, the “City” accepted a down payment from Mr. Perotta and gave him a signed memorandum of sale. The plaintiffs pursued their protest to the Board of Estimate, which after consideration, rejected all bids including the sale to Mr. Perotta and directed that the parcel be again listed for sale. The cancellation of the sale to Mr. Perotta was based upon the reservation by the ‘1 City ’ ’ of the right to cancel any •sale prior to the delivery of a deed. This reservation was set forth in the Standard Terms and Conditions of Sale contained in the “ Offering Brochure ”. The parcel is now again being listed for public auction.
The plaintiff Tayar contends that the sale to him was binding and that the “ City ” had no right to reject his bid and reoffer the parcel for sale.
It is the “ City’s ” position that it had the right to reject Tayar’s bid at any time prior to the delivery of the deed and furthermore, the Statute of Frauds bars the plaintiffs’ claims.
Section 384 of the City Charter entitled £ £ Disposal of property of the city ” provides, in part, as follows:
“ a. No real property of the city may be sold * * * except with the approval of the board of estimate and as may be provided by law * * * b. * * • *
‘ ‘ 1. The board of estimate may sell * * * only for the highest marketable price * * * at public auction” (emphasis supplied).
This section clearly requires that the “ City’s ” property bé offered and sold at the highest possible price. Inherent in the right to sell for the “ highest marketable price ” is the right of the official in charge to cancel and reject all auction bids if he believes the auctioneer acted too quickly in accepting a seemingly highest bid or to have ignored a higher bid. Auction sales, like the advertising for and acceptance of lower bids for work and material to be furnished to the “City”, are conducted for the benefit of the public and not for the individual profit of the bidder. The official in charge of a sale of property is analogous to a trustee and as such is mandated to dispose of trust property upon the most beneficial terms' possible *614 for him. to .secure. He must do his best to insure full competitive bidding (Matter of Ross v. Wilson, 308 N. Y. 605; Tarshis v. City of New York, 24 A D 2d 644, mod. 24 A D 2d 723, affd. as mod. 17 N Y 2d 451; Matter of Allen v. Eberling, 24 A D 2d 594). Just as the discretion to approve an act affecting a public interest carries with it the right to disapprove, so too the officer and the Board of Estimate, charged with the duty to sell property at the ‘ ‘ highest marketable price ’ ’ concomitantly have the authority to reject bids that are not at the “highest marketable price.” (City of New York v. Union News Co., 222 N. Y. 263; Matter of Klevens v. City of Yonkers, 15 Misc 2d 1040.)
Plaintiffs’ allegations that the rejection of the auctioneer’s acceptance of plaintiffs’ alleged highest bid and refusal to sell was wrongful, illegal and malicious are without merit.
Additionally, the court finds that plaintiffs ’ complaint, assuming all the allegations therein to be true, is deficient as a matter of law. In each of the authorities cited by plaintiffs where the courts have disapproved the grounds for the rejection of the sale, there was an actual sale; a deposit was received and a signed memorandum of the transaction was delivered. In the instant action there was no sale. There was, at most, a mere acceptance by the auctioneer of a seemingly high bid. “ The bid is .an offer to purchase and the acceptance of the bid and the execution of the agreement to purchase constitutes a sale * * *. The sale took place immediately upon the acceptance of the bid and the signing of tke memorandum of sale” (emphasis added). (New York Lien Corp. v. City of New York, N. Y. L. J., Oct. 4, 1962, p. 16, col. 5 [Crane, J.]; see, also, City of New York v. Kurtz, N. Y. L. J., July 22, 1969, p. 10, col. 2, [Multer, J.]) The refusal to accept plaintiffs’ deposit and sign a memorandum was a refusal to enter into a contract. Consequently, plaintiffs have no contract capable of enforcement.
Lastly, the lack of a signed memorandum is a bar to plaintiffs’ action. Under subdivision 6 of section 5-701 of the General Obligations Law, the auctioneer’s entries, wken dealing with personal property, may constitute the requisite memorandum. However, section 5-703 of the General Obligations Law, dealing with real property, has no such similar provision. A subscribed memorandum by the party to be charged is still a necessity to enforce a contract of sale of real property. The omission from said section of the provision with respect to the auctioneer’s entries constituting a memorandum does not appear to be a mere oversight by our Legislature. More is *615 required in the sale of realty. The auctioneer and any other agent under section 5-1111 of the General Obligations Law would have to be authorized in writing to sell the specific realty. There is no such requirement with respect to personal property. In any event, there is no allegation of written entries by the auctioneer, nor if any that they were sufficient to constitute the requisite memorandum. Not all entries of an auctioneer under the old Statute of Frauds were held to be sufficient. (Mentz v. Newwitter, 122 N. Y. 491.)
This court, therefore, holds that auction sales of realty require, in addition to the auctioneer’s acknowledgment of the highest bid, a subscribed memorandum of the sale.
Accordingly, plaintiffs’ motion for summary judgment is denied and defendants’ cross motion to dismiss plaintiffs’ complaint is granted.